Ian A. Stewart (State Bar No. 250689)
Ian.Stewart@wilsonelser.com
Jason M. Yang (SBN 287311)
Jason.Yang@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
     **EDELMAN & DICKER LLP**
555 Flower Street, Suite 2900
Los Angeles, California 90071-2407
Telephone:   (213) 443-5100
Facsimile:    (213) 443-5101

David M. Macdonald, *admitted Pro Hac Vice*
dmacdonald@macdonalddevin.com
James R. Parish, *Pro Hac Vice*
jparish@macdonalddevin.com
**MACDONALD DEVIN, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270
Tel:  (214) 744-3300
Fax: (214) 747-0942

Attorneys for Defendant,
MECTA CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RIERA; MICHELLE HIMES; DIANE SCURRAH; DEBORAH CHASE; individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MECTA CORPORATION; SOMATICS LLC; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:17-cv-06686-RGK-PJW <br><br> Hon. R. Gary Klausner <br> Courtroom 850 <br><br> **DEFENDANTS MECTA CORPORATION AND SOMATICS, LLC'S MOTION TO DISMISS PLAINTIFFS' CLAIMS BASED ON LACK OF CAUSATION AND DUTY TO WARN** <br><br> **DATE:    April 9, 2018** <br> **TIME:    9:00 a.m.** <br><br> Action Filed:  September 11, 2017 |

1

2985433v.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    BACKGROUND ...................................................................................1

II.   PLAINTIFFS' PLEADING ALLEGATIONS .............................................2

III.  LAW AND ARGUMENT .......................................................................3

    A.   Motion to Dismiss ...................................................................3

    B.   Plaintiffs Cannot Establish Their Alleged Injuries Were Caused by Defendants' Products ...........................................................4

    C.   Defendants Have No Legal Duty to Warn Plaintiffs About Any Alleged Risks Associated with Products Manufactured and Sold by Others ..........................................................................5

        1.   The General Rule in California is that There is No Duty to Warn About Risks Associated with Products of Other Manufacturers and Sellers ............................................5

        2.   Although There are Historically a Few Exceptions to the General Rule, No Such Exceptions Apply in This Case ...........6

        3.   The New and Very Narrow Exception Recognized in *T.H. v. Novartis* Does Not Apply to This Case ....................................8

    D.   Benjamin's Loss of Consortium Claim Must Fail Because His Spouse's Underlying Claim Against Defendants Lacks Merit...........13

IV.   CONCLUSION .....................................................................................14

i

2985433v.3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Owens-Corning Fiberglas Corp.*,
    810 P.2d 549 (Cal. 1991) ...................................................................................5

*Andrews v. Foster Wheeler LLC*,
    138 Cal. App. 4th 96 (2006) ...........................................................................4, 5

*Bettencourt v. Hennessy Indus., Inc.*,
    205 Cal. App. 4th 1103 (2012) ..........................................................................7

*Blackwell v. Phelps Dodge Corp.*,
    157 Cal. App.3d 372 (1984) ...............................................................................6

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ...............................................................................4

*DeLeon v. Commercial Mfg. & Supply Co.*,
    148 Cal. App. 3d 336 (1983) .............................................................................7

*Garman v. Magic Chef, Inc.*,
    117 Cal. App.3d 634 (1981) ...............................................................................6

*Hahn v. Mirda*,
    147 Cal. App. 4th 740 (2007) .....................................................................13, 14

*In re Deep Vein Thrombosis*,
    356 F. Supp.2d 1055 (N.D. Cal. 2005) .............................................................6

*Izell v. Union Carbide Corp.*,
    231 Cal. App. 4th 962 (2014) .........................................................................4, 5

*Johnson v. American Standard, Inc.*,
    179 P.3d 905 (Cal. 2008) ...................................................................................5

*Kesner v. Superior Court*,
    384 P.3d 283 (Cal. 2016) ..............................................................................9, 11

*Kovary v. Honeywell Int'l, Inc.*,
    No. CV 10-494-GW(CWx) (C.D. Cal. Aug. 23, 2012) ....................................7

ii

*LeFiell Mfg. Co. v. Superior Court*,
  55 Cal. 4th 275 (Cal. 2012)..................................................................14

*McGonnell v. Kaiser Gypsum Co.*,
  98 Cal. App. 4th 1098 (2002) ...............................................................4

*McIntyre v. Colonies-Pacific, LLC*,
  228 Cal. App. 4th 664 (2014) ...............................................................4

*Merrill v. Navegar, Inc.*,
  28 P.3d 116 (Cal. Ct. App. 2001) ........................................................10

*O'Neil v. Crane Co.*,
  266 P.3d 987 (Cal. 2012).............................................................5, 6, 7

*Petitpas v. Ford Motor Co.*,
  13 Cal. App. 5th 261 (2017) .................................................................4

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011)..........................................................................9, 10

*Powell v. Standard Brands Paint Co.*,
  166 Cal. App.3d 357 (1985) ..................................................................6

*Rowland v. Christian*,
  443 P.2d 561 (Cal. 1968) .......................................................................9

*Shields v. Hennessy Indus., Inc.*,
  205 Cal. App. 4th 782 (2012) ................................................................7

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................4

*T.H. v. Novartis Pharms. Corp.*,
  *407 P.3d 18 (Cal. 2017)* .............................................8, 9, 10, 11, 12, 13

*Taylor v. Elliott Turbomachinery Co.*,
  171 Cal. App. 4th 564 (2009) ................................................................6

*Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.*,
  129 Cal. App. 4th 577 (2004) ................................................................7

*Wyeth v. Levine*,
  555 U.S. 555 (2009)................................................................................9

iii

2985433v.3

**Statutory Authorities**

21 C.F.R. § 314.70(c)(3)................................................................................10

21 U.S.C. § 352(f)(2)....................................................................................10

**Rules**

Federal Rule of Civil Procedure 12(b)(6)..........................................3, 14

iv

2985433v.3

Defendants MECTA Corporation ("MECTA") and SOMATICS, LLC ("Somatics") (collectively referred to as "Defendants") file this Motion to Dismiss Plaintiffs' Claims Based on Lack of Causation and Duty to Warn pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

All of the claims of Plaintiffs Jose Riera, Michelle Himes, Diane Scurrah, Deborah Chase, and Marcia Benjamin (collectively referred to as "Plaintiffs"), as well as derivative claims asserted by Plaintiff Daniel Benjamin ("Benjamin"), should be dismissed with prejudice because Plaintiffs do not assert Defendants are the manufacturers or sellers of the specific products that allegedly caused their injuries.  As a matter of law, Plaintiffs and Benjamin cannot establish the necessary elements of causation and duty to warn to support their claims against Defendants.

## I.    BACKGROUND

On September 11, 2017, Plaintiffs and Benjamin filed the above captioned case against Defendants, alleging that Plaintiffs were injured when they received electroconvulsive therapy ("ECT") in California using ECT devices manufactured by Defendants *or* other unknown and unnamed entities identified as Does 1 through 10 (hereinafter referred to as "Unknown Defendants").[1]  Plaintiffs' claims against Defendants are based solely on the alleged failure of Defendants to provide information to the Food and Drug Administration regarding purported adverse events associated with the use of their ECT devices.[2]

Plaintiffs bring causes of action for negligence per se and strict products liability based on alleged failure to warn under California law.[3]  Benjamin did not receive any ECT treatments, but his claim is for loss of consortium as the alleged

---

[1] *See* Plaintiffs' Original Complaint, Docket Entry 1.
[2] *See* Plaintiffs Second Amended Complaint, at ¶¶ 88-108, Docket Entry 42.
[3] *Id.*

1

husband of Plaintiff Marcia Benjamin.[4]   As a consequence, Benjamin's claim is tied to and derivative of Plaintiff Marcia Benjamin's claims.

## II.   PLAINTIFFS' PLEADING ALLEGATIONS

As asserted in Plaintiffs' Second Amended Complaint, Plaintiffs' alleged injuries in this case are not tied to any specific products manufactured or sold by Defendants.   Instead, Plaintiffs complain that ECT treatments in general are unreasonably dangerous, and that Defendants and Unknown Defendants— manufacturers and/or sellers of equipment used to conduct ECT procedures— allegedly failed to report adverse events associated with such treatments to the FDA.

Although Plaintiffs generally allege that they "underwent [ECT] treatment delivered by ECT shock devices placed into the stream of commerce by one of the Defendants,"[5] it is significant to note that the term "Defendants," as used in the Second Amended Complaint, refers to *both* Defendants *and* Unknown Defendants.[6]   In other words, Plaintiffs fail to distinguish in their allegations between products manufactured by Defendants and any products that may have been manufactured and/or sold by Unknown Defendants.   Plaintiffs therefore do not allege in Plaintiffs' Second Amended Complaint that any individual Plaintiff had any contact at all with any ECT equipment manufactured and sold by either of the *named* Defendants.

Plaintiffs also request that the Court certify a class of persons who received ECT treatments "using an ECT shock device manufactured, sold and/or distributed by" Defendants *or* Unnamed Defendants.[7]   Again, Plaintiffs do not plead that any putative class member necessarily had any contact with any ECT equipment manufactured or sold by Defendants.   Plaintiffs acknowledge as much by stating

---

[4] *Id.* at ¶¶ 33, 110-114.
[5] *Id.*, ¶ 92.
[6] *See id.* at p. 2 (introductory paragraph).

1    elsewhere in their pleadings that "[m]any putative class members are unable to
2    ascertain which of the Defendants [or Unnamed Defendants] manufactured the
3    particular device that contributed to their injuries."[8]

4        In connection with their claims, Plaintiffs bring two causes of action:  (1)
5    negligence/negligence *per se*[9] and (2) strict product liability.[10]  Benjamin brings a
6    cause of action for loss of consortium.[11]  All of the claims in Plaintiffs' Second
7    Amended Complaint are based on Plaintiffs' allegations that Defendants generally
8    failed to discharge legal duties to report allege adverse events associated with their
9    products to the FDA and make other purportedly required filings with the FDA
10   over the course of 35 years.[12]  These broad allegations are made irrespective of
11   whether any particular Defendant's product was used to administer ECT treatments
12   to any individual Plaintiff.  Accordingly, none of Plaintiffs' causes of action in
13   Plaintiffs' Second Amended Complaint are expressly tied to the alleged use of any
14   products manufactured by Defendants, as opposed to products that might have
15   been manufactured and/or sold by any Unknown Defendant.  As pleaded, there is
16   no legal basis for these claims against Defendants, and all claims and causes of
17   action against Defendants should be dismissed as a matter of law.

18   **III.    LAW AND ARGUMENT**

19       **A.    MOTION TO DISMISS**

20       Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be
21   dismissed for failure to state a claim on which relief may be granted.  On such a
22   motion, a court must accept well-pleaded factual allegations as true,[13] but not those
23   that are unwarranted deductions of fact based on unreasonable inferences or

---

[7] *Id.*, ¶ 44.
[8] *Id.*, ¶ 84.
[9] *Id.*, ¶¶ 88-97.
[10] *Id.*, ¶¶ 98-108.
[11] *Id.*, ¶¶ 109-114.
[12] *Id.*, ¶¶ 90-91, 100.

3

conclusory statements.[14]

### B. PLAINTIFFS CANNOT ESTABLISH THEIR ALLEGED INJURIES WERE CAUSED BY DEFENDANTS' PRODUCTS

Causation is an essential element in any claim based on negligence or strict product liability.[15]   In cases involving alleged asbestos-related injuries, for example, California courts have held that a "threshold issue" is exposure to the defendant's product.[16]  "It is axiomatic that, [i]f there has been no exposure, there is no causation.'"[17]  Further, "'[t]he mere 'possibility' of exposure' is insufficient to establish causation."[18]

In this case, there are no express allegations that Plaintiffs had any contact with any equipment manufactured or sold by Defendants, or that any of *Defendants*' products actually caused Plaintiffs' alleged injuries.   Instead, as discussed above, Plaintiffs assert nothing more than the *possibility* they might have received ECT treatments using Defendants' equipment.   This type of conjecture cannot, as a matter of law, establish the necessary causal nexus between Defendants' products and Plaintiffs' alleged injuries.[19]   Accordingly, Plaintiffs' negligence and strict liability claims should be dismissed for failure to satisfy the element of causation required to support their claims.

///

///

///

---

[13] *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted).

[14] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

[15] *See Petitpas v. Ford Motor Co.*, 13 Cal. App. 5th 261, 287 (2017); *McIntyre v. Colonies-Pacific, LLC*, 228 Cal. App. 4th 664, 671 (2014).

[16] *Izell v. Union Carbide Corp.*, 231 Cal. App. 4th 962, 968-69 (2014); *McGonnell v. Kaiser Gypsum Co.*, 98 Cal. App. 4th 1098, 1103 (2002).

[17] *Izell*, 231 Cal. App. 4th at 969 (quoting *McGonnell*, 98 Cal. App. 4th at 1103).

[18] *Izell*, 231 Cal. App. 4th at 969 (quoting *Andrews v. Foster Wheeler LLC*, 138 Cal. App. 4th 96, 108 (2006)).

4

### C. DEFENDANTS HAVE NO LEGAL DUTY TO WARN PLAINTIFFS ABOUT ANY ALLEGED RISKS ASSOCIATED WITH PRODUCTS MANUFACTURED AND SOLD BY OTHERS

In addition to causation, the existence of a legal duty is an essential element of Plaintiffs' failure to warn claims under both their negligence and strict liability causes of action.[20]  Because Plaintiffs cannot establish that the equipment used to administer the ECT treatment they received was manufactured or sold by Defendants, they cannot establish, as a matter of law, that Defendants had a duty to warn them of any alleged risks associated with ECT treatments.  As a consequence, Plaintiffs' failure to warn claims should be dismissed as a matter of law.

#### 1. The General Rule in California is that There is No Duty to Warn About Risks Associated with Products of Other Manufacturers and Sellers

Generally speaking, manufacturers have a duty to warn consumers about the hazards inherent in their products.[21]  The purpose of the duty is to advise consumers who may not be aware of a product's hazards and faults so they can either avoid use of the product or exercise appropriate caution in using the product.[22]

Typically, California courts hold manufacturers strictly liable for injuries caused by their failure to warn of dangers that were known in the scientific community when they manufactured and distributed their products.[23]  However, the California Supreme Court recently reiterated it has "never held that a manufacturer's duty to warn extends to hazards arising exclusively from other manufacturers' products," and that California law has long recognized instead that

---

[19] *See Izell*, 231 Cal. App. 4th at 969; *Andrews*, 138 Cal. App. 4th at 108.
[20] *See O'Neil v. Crane Co.*, 266 P.3d 987, 991 (Cal. 2012).
[21] *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 554 (Cal. 1991).
[22] *Id.* at 559.
[23] *Johnson v. American Standard, Inc.*, 179 P.3d 905, 910 (Cal. 2008).

5

"the duty to warn is limited to risks arising from the manufacturer's own product."[24]  This general rule applies to preclude any liability to Defendants in this case for any harm allegedly caused by products manufactured and sold by others.

Even if a manufacturer's products are to be used with other products that may pose a risk to the user or others, the manufacturer does not necessarily have a duty to warn users or others of the risks associated with the other products.  In *O'Neil*, for example, the California Supreme Court held that certain manufacturers of valves and pumps that were designed to be used with asbestos-containing components (and who had provided no warnings regarding the risks of asbestos exposure) had no legal duty to plaintiffs who were allegedly injured by replacement gaskets, packing, and external insulation products manufactured by other companies and later added to the manufacturers' products.[25]

## 2. Although There are Historically a Few Exceptions to the General Rule, No Such Exceptions Apply in This Case

There have been some cases in which California courts have distinguished the foregoing authorities and held that manufacturers of products that have as their "only purpose" and "inevitable use" the manipulation or treatment of other products in a way that creates a hazardous condition may have a legal duty to

---

[24] *O'Neil*, 266 P.3d at 997; *see Powell v. Standard Brands Paint Co.*, 166 Cal. App.3d 357, 363 (1985); *Blackwell v. Phelps Dodge Corp.*, 157 Cal. App.3d 372, 377 (1984); *Garman v. Magic Chef, Inc.*, 117 Cal. App.3d 634, 638 (1981).

[25] *See O'Neil*, 266 P.3d at 998 ("[N]o case law ... supports the idea that a manufacturer, after selling a completed product to a purchaser, remains under a duty to warn the purchaser of potentially defective additional pieces of equipment that the purchaser may or may not use to complement the product bought from the manufacturer.") (quoting *In re Deep Vein Thrombosis*, 356 F. Supp.2d 1055, 1068 (N.D. Cal. 2005)); *see also Taylor v. Elliott Turbomachinery Co.*, 171 Cal. App. 4th 564, 575 (2009) ("[I]n California, a manufacturer has no duty to warn of defects in products supplied by others and used in conjunction with the manufacturer's product unless the manufacturer's product itself causes or creates the risk of harm.").

6

1 persons who may be injured as a result of such use.[26]  For example, in *Bettencourt*

2 *v. Hennessy Indus., Inc.*,[27] the court held that the manufacturer of a brake shoe

3 grinding machine that did not contain asbestos was nevertheless potentially liable

4 to plaintiffs who had been exposed to the grinding of asbestos brake linings using

5 the manufacturer's machine.[28]

6       There may also be an exception to the "no duty" rule where the

7 manufacturer "'participated substantially in creating a harmful combined use' of its

8 own, non-defective product and the defective product."[29]  In other words, if a

9 defendant manufacturer is "heavily involved in creating the dangerous condition

10 that gave rise to plaintiff's injury," the manufacturer could still be held liable for

11 the injury despite the fact that its own product was not defective.[30]  In *DeLeon v.*

12 *Commercial Mfg. & Supply Co.*,[31] for example, the court held that the

13 manufacturer of a shaker bin designed to be placed in close proximity to a rotating

14 line shaft that caused the plaintiff's injuries could be liable for the harm caused by

15 the rotating line shaft, reasoning that the "bin manufacturer contributed to this

16 dangerous condition [of the combined use of these two products] because it

17 designed the bin specifically for use in the particular site where it was located."[32]

18

19

---

20 [26] *See Shields v. Hennessy Indus., Inc.*, 205 Cal. App. 4th 782, 797-98 (2012)
("Hennessy's product [a brake arcing machine] was intended to be used with

21 another product for the very activity that created a hazardous situation for the user.
Its sole intended use was for an activity known to Hennessy to pose an

22 unreasonable risk of harm."); *Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger
Co.*, 129 Cal. App. 4th 577, 581-83 (2004) (holding that manufacturer of power

23 tools designed for the sole intended purpose of grinding and sanding metals could
be subject to legal duty with respect to persons in area where grinding and/or

24 sanding operations released harmful metallic dust into the air).
[27] 205 Cal. App. 4th 1103 (2012).

25 [28] *Id.* at 1117.
[29] *Kovary v. Honeywell Int'l, Inc.*, No. CV 10-494-GW(CWx), 2012 WL

26 12878750, at *9 (C.D. Cal. Aug. 23, 2012) (quoting *O'Neil*, 266 P.3d at 991).
[30] *O'Neil*, 266 P.3d at 991.

27 [31] 148 Cal. App. 3d 336 (1983).
[32] *O'Neil*, 266 P.3d at 1003; s*ee DeLeon,* 148 Cal. App.3d at 341-42, 345.

28

1    In all of the "exception" cases cited above, the defendant manufacturer's
2    product had at least some involvement in the events giving rise to the plaintiff's
3    alleged injuries.  As discussed above, there is no allegation here that Defendants'
4    products had any direct connection with Plaintiffs' alleged injuries.  As a
5    consequence, none of the historically-recognized exceptions to the general rule
6    described above would apply to this case.

7            **3.    The New and Very Narrow Exception Recognized in *T.H. v.***
8            ***Novartis* Does Not Apply to This Case**

9    Plaintiffs are expected to assert that a recent California Supreme Court case
10   – *T.H. v. Novartis Pharms. Corp.*[33] – imposes a legal duty on MECTA to warn
11   them about the alleged risks associated with ECT treatments in general, regardless
12   of whether MECTA's or Somatics' ECT devices were used in Plaintiffs'
13   treatments.  The *T.H.* case is clearly distinguishable from this case, however, and
14   does not support an argument that MECTA or Somatics owed Plaintiffs any duty to
15   warn them of any risks associated with the use of other manufacturers' ECT
16   devices.

17   In *T.H.*, the plaintiffs were minors who were allegedly injured as a result of
18   side effects of a drug taken by their mother during her pregnancy.  The defendant
19   was the manufacturer of the name brand version of the drug, but the drugs
20   provided to the mother had been manufactured as generic drugs by another drug
21   manufacturer.  The defendant brand manufacturer sought to dismiss the case based
22   on an argument that it had no duty to the plaintiffs to warn their mother about
23   possible side effects of another manufacturer's products.  The California Supreme
24   Court framed the unique issue to be decided as follows:

25           Under California law, a brand-name drug manufacturer
26           has a duty to warn of known or reasonably knowable

27
28   [33] 407 P.3d 18 (Cal. 2017).

8

1   adverse effects arising from an individual's use of its
2   drug.  In this case, we examine whether—and if so, under
3   what circumstances—a brand-name drug manufacturer
4   may be sued under a theory of "warning label" liability
5   when the warning label for its drug was alleged to be
6   deficient, but the plaintiffs were injured by exposure to a
7   generic bioequivalent drug bearing the brand-named
8   drug's warning label.[34]

9

10   Ultimately, the court found the answer to this question was "yes," but only under
11   the circumstances presented in that case.

12        The court's holding in *T.H.* relies upon the unique federal regulatory scheme
13   that applies solely to drug manufacturers.  Under this scheme, "brand-name and
14   generic drug manufacturers have different federal drug labeling duties."[35]  As the
15   court recognized, "[i]t is the brand-name manufacturer that bears responsibility for
16   the accuracy of its label 'as long as the drug is on the market.'"[36]  On the other
17   hand, "[t]he generic manufacturer ... is responsible only for 'an ongoing federal
18   duty of 'sameness''—that is, ensuring that its warning label is the same as the
19   brand-name manufacturer's."[37]

20        Under California law, a legal duty is generally imposed based on factors
21   related to foreseeability and public policy justifications.[38]  California courts have
22   recognized that the most important consideration for imposing a legal duty is the
23   foreseeability of physical harm resulting from the defendant's acts or omissions.[39]

24

---

25   [34] *T.H.,* 407 P.3d at 21-22 (citation omitted).
26   [35] *Id.* at 23 (quoting *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011)).
     [36] *T.H.*, 407 P.3d at 23 (quoting *Wyeth v. Levine*, 555 U.S. 555, 570-71 (2009)).
27   [37] *T.H.*, 407 P.3d at 23 (quoting *PLIVA*, 564 U.S. at 613).
     [38] *T.H.*, 407 P.3d at 28; *see also Kesner v. Superior Court*, 384 P.3d 283 (Cal.
28   2016); *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968).
     [39] *Kesner*, 384 P.3d at 283.

9

1    Even if a risk of physical harm is foreseeable, however, there will be no duty of
2    care if "the social utility of the activity concerned is so great, and avoidance of the
3    injuries so burdensome to society, as to outweigh the compensatory and cost-
4    internalization values of negligence liability."[40]  The court found that both of these
5    factors justified the imposition of a legal duty on the part of the defendant brand
6    manufacturer in the *T.H.* case in the context of prescription drug labels.

7         With respect to foreseeability, the court noted that a brand-name drug
8    manufacturer such as the defendant manufacturer in that case "has a duty under
9    federal law to draft, update, and maintain the warning label so that it provides
10   adequate warning of the drug's potentially dangerous effects."[41]  Although the
11   brand-name manufacturer generally must obtain FDA approval to make any
12   changes to the existing label, it can add to or strengthen any warnings immediately
13   upon filing under a "changes being effected" regulation.[42]  Conversely, all generic
14   manufacturers are *required* by federal law to follow the brand-name
15   manufacturer's labeling.[43]

16        Because of this unique regulatory scheme, "[w]hat a brand-name
17   manufacturer ... knows to a legal certainty is that any deficiencies in the label for
18   its drug will be perpetuated in the label for its generic bioequivalent."[44]
19   Accordingly, the court concluded that "it is entirely foreseeable that the warnings
20   included (or not included) on the brand-name drug label would influence the
21   dispensing of the generic drug, either because the generic is substituted by the
22   pharmacist or the insurance company *after* the physician has prescribed the brand-
23
24
25

26   [40] *Merrill v. Navegar, Inc.*, 28 P.3d 116 (Cal. Ct. App. 2001).
27   [41] *T.H.*, 407 P.3d at 29; *see* 21 U.S.C. § 352(f)(2).
     [42] *T.H.*, 407 P.3d at 29*; see* 21 C.F.R. § 314.70(c)(3).
28   [43] *T.H.*, 407 P.3d at 29; *see PLIVA*, 564 U.S. at 613-14.
     [44] *T.H.*, 407 P.3d at 29.

                                          10

name drug, or because the warning label on the generic drug is legally required to be identical to the label on the brand-name drug."[45]

As for public policy considerations, the court recognized that "[t]he overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible."[46]   According to the court, a brand-name drug manufacturer is "in the best position to warn of a drug's harmful effects" and is, in fact, "the only manufacturer with the unilateral authority under federal law to issue such a warning for the brand-name drug or its generic bioequivalent."[47]   The court reasoned that the burden on a brand-name drug manufacturer of satisfying a common law duty of care to those who are prescribed the generic version of the drug is virtually non-existent because it already has a duty under federal law to provide adequate warnings.[48]   If the brand-name manufacturer complies with its existing duties, it should have no "warning label" liability to anyone.[49]   Moreover, the potential exposure of the brand-name drug manufacturer to those who have taken a generic bioequivalent is offset by the previous monopoly over the market it had enjoyed for several years and the continuing ability to charge higher prices for its products.[50]   Under the specific facts presented, the court found that these and other public policy considerations favored imposition of a duty upon the brand-name drug manufacturer in that case.[51]

Although the *T.H.* case appears to be the first California case imposing a duty on a product manufacturer whose actual product had no direct or indirect involvement with the injured plaintiff, it is significant to note that the court in *T.H.*

---

[45] *Id.* at 30.
[46] *T.H.*, 407 P.3d at 31 (quoting *Kesner*, 384 P.3d at 283).
[47] *T.H.*, 407 P.3d at 31.
[48] *Id.* at 32.
[49] *Id.*
[50] *Id.* at 33-34.
[51] *Id.* at 39.

11

expressly stated that the duty imposed in that case was very narrow.[52]   The court stated that a brand-name drug manufacturer would not be liable "where, for example, the injury arose from a defect in the manufacturing process of the generic drug, the generic manufacturer failed to conform its label to the brand-name drug's label, or the generic manufacturer was promoting a use that was inconsistent with the FDA-approved label."[53]   In fact, the court acknowledged that the imposition of a duty under the circumstances in that case was not based on the brand-name manufacturer's product itself, but on its statutory right and duty to control *all* labeling used by *any* manufacturer of the product.[54]   Thus, the court's holding is limited to the duty to warn in the context of the regulatory scheme covering brand-name and generic drugs, and the unique labeling requirements imposed on the brand-name manufacturer under the federal regulations.

The present case, of course, does not involve drugs, and the federal regulatory requirements that underpinned the court's holding in the *T.H.* case do not apply to Defendants or their ECT devices.   In the *T.H.* case, the court made it very clear that the ruling was narrow in scope, in that the basis of the defendant's duty with respect to the labeling of generic bioequivalents was its ability to *control* the content of such labeling.[55]   Here, there are no federal statutes or regulations that allow Defendants to determine the content of the warnings on any products other than their own.   Unlike the brand-name drug manufacturer in *T.H.*, Defendants do not now have, nor have they ever had, the ability to control the content of any warnings or advisories that may be attached to any products of other

---

[52] *Id.* at 33.
[53] *Id.* at 32 (citations omitted).
[54] *See id.* at 39 ("The fact that [the defendant brand-name manufacturer] *also* manufactured a product is extrinsic to the [duty] analysis and does not insulate it from liability for its alleged misrepresentations.").
[55] *See id.* at 39 (stating that the duty recognized in that case would often not exist because "[a] product manufacturer ordinarily will have no control over the design or safety of another manufacturer's product, the other manufacturer's use of

12

manufacturers.  As a consequence, it is not reasonably foreseeable to Defendants that they could be subject to liability for injuries allegedly inflicted by devices they did not manufacture or sell, and over which they have no control.

Moreover, public policy considerations cannot justify the imposition of any duty to warn in this case.  Unlike the defendant drug manufacturer in *T.H.*, Defendants do not have an *existing* legal duty to provide label warnings for products manufactured and sold by their competitors.  Further, Defendants have received no benefit, like the brand-name drug manufacturer's monopoly and ability to charge a premium, as recognized in the *T.H.* case, to offset the virtually limitless exposure Defendants could face if they were adjudged to be responsible for other manufacturer's products.  The court in *T.H.* clearly recognized that its ruling should be limited to the unique circumstances of that case.  The present case does not fall within those unique circumstances.  Thus, the holding in *T.H.* is not applicable to this case.

### D.   BENJAMIN'S LOSS OF CONSORTIUM CLAIM MUST FAIL BECAUSE HIS SPOUSE'S UNDERLYING CLAIM AGAINST DEFENDANTS LACKS MERIT

As stated above, Benjamin has brought a loss of consortium claim against Defendants based on the alleged injuries to his spouse that are the subject of his spouse's claims against Defendants.  A loss of consortium claim has four elements: "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act."[56]  The California Supreme Court has recognized that "[a] cause of action for loss of consortium is, by its nature, dependent on the existence

---

dangerous materials, or any warnings the other manufacturer might place on the product").

[56] *Hahn v. Mirda*, 147 Cal. App. 4th 740, 746 n.2 (2007).

13

of a cause of action for tortious injury to a spouse."[57]   Because Benjamin's spouse's claim must fail, as a matter of law, based on the grounds discussed above, Benjamin's loss of consortium claim must also fail as a matter of law.[58]

## IV.   CONCLUSION

Plaintiffs have not alleged and cannot establish that any equipment manufactured by Defendants caused them any injuries.  Further, Plaintiffs cannot show that Defendants owed them any legal duty to provide warnings about equipment that may have been manufactured and/or sold by companies other than Defendants.  As a consequence, Defendants are entitled to dismissal of all claims and causes of action asserted against them by Plaintiffs and Benjamin pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  March 8, 2018                   WILSON, ELSER, MOSKOWITZ,
                                                            EDELMAN & DICKER LLP


                                            By: /s/ Ian A. Stewart
                                                  Ian A. Stewart
                                                  Jason M. Yang
                                                  Attorneys for Defendant,
                                                  MECTA CORPORATION



Dated: March 8, 2018                   MACDONALD DEVIN, P.C.


                                            By:/s/ David M. Macdonald
                                                  David M. Macdonald, *admitted Pro Hac Vice*
                                                  James R. Parish, *Pro Hac Vice*

---

[57] *LeFiell Mfg. Co. v. Superior Court*, 55 Cal. 4th 275, 285 (Cal. 2012) (quoting *Hahn*, 147 Cal. App. 4th at 746).
[58] *See LeFiell Mfg.*, 55 Cal. 4th at 285 (upholding dismissal of loss of consortium claim based on legal bar to injured spouse's underlying claim against defendant).

14