**POOLE & SHAFFERY, LLP**
David S. Poole (SBN 94690)
 dpoole@pooleshaffery.com
Jason A. Benkner (SBN 286790)
 jbenkner@pooleshaffery.com
400 South Hope Street, Suite 720
Los Angeles, CA 90071
Telephone: (213) 439-5390
Facsimile:  (213) 439-0183

Attorneys for Defendant SOMATICS LLC

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RIERA; and DEBORAH CHASE;<br><br>          Plaintiffs,<br><br>vs.<br><br>SOMATICS, LLC,<br><br>          Defendants. | Case No.: 2:17-CV-06686-RGK-PJW<br>[Assigned to Hon. R. Gary Klausner, Court Room 850]<br><br>**OBJECTION BY SOMATICS, LLC TO DECLARATION OF PETER BREGGIN, M.D. USED IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:** September 4, 2018<br>**Time:** 9:00 a.m.<br>**Courtroom:** 850<br><br>Trial Date: October 2, 2018 |

**COMES NOW**, Defendant, SOMATICS LLC ("Somatics"), and objects the Declaration of Peter Breggin, M.D. used in Opposition to Defendant's Motion for Summary Judgment, as follows:

1

**OBJECTION BY SOMATICS, LLC TO DECLARATION OF PETER BREGGIN, M.D., USED IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. FACTS

### A. Dr. Breggin's Declaration

Plaintiffs' opposition to Somatics' Motion for Summary Judgment relies, in part, on a declaration from Peter Breggin, M.D. filed in support of Plaintiffs' prior Motion for Class Certification. *Breggin Decl.*, Docket Entry 26-2. Dr. Breggin claims that "ECT universally damages the brains of patients" (¶ 12), and that "[t]he result in all cases without exception is a concussive-like traumatic brain injury from every single effective treatment." ¶ 14. Dr. Breggin takes the bold position that not only is "brain damage" a potential side effect of ECT, but that brain damage is <u>conclusive</u> consequence of treatment.

However, Dr. Breggin does not identify his methodology relied upon in testing and/or concluding that ECT universally causes "brain damage." Dr. Breggin cites *generally* to a number of publications, many of which are from the 1940s, and the majority of which were conducted prior to 1982, when ECT devices and methods of administration were drastically different from the devices and methods of administration used in Plaintiffs' treatments. ¶ 18; see *Weiner Affidavit*, ¶ 14, p. 6, Docket Entry 37-2.

### B. Dr. Breggin's Prior Excluded Opinions Are Consistent With Deficiencies Present In This Declaration

A history of exclusion exists pertaining to Dr. Breggin's opinions for failing to meet admissibility standards. For example, other courts have found:

> This Court finds that the evidence of Peter Breggin, as a purported expert, fails nearly all particulars under the standard set forth in *Daubert* and its progeny … Simply put the Court believes that Dr. Breggin's opinions do not rise to the level of an opinion based on 'good science.'

*Estate of Lam v. Upjohn Co.*, No. Civ. A. 94-003-H, 1995 WL 478844, (W.D.V. April 21, 1995).

> Dr. Breggin (1) has not identified a methodology for determining general causation which has been accepted in the scientific community, (2) has failed to account for a substantial body of evidence which has found no

POOLE | SHAFFERY
400 SOUTH HOPE STREET, SUITE 720, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

causal link, (3) has not adequately distinguished statistical association from causation.
*Vanderwerf v. SmithKlineBeecham Corp.*, 529 F.Supp.2d 1294 (2008).

There is no dispute that the conclusions of Breggin are novel. However, it is the methodology, not the conclusion, of concern to the court … Breggin readily admits that he has conducted neither clinical trials nor clinical studies … [t]he 'methods' described appear to be nothing more than a few anecdotal references and a cursory review of several studies tangentially related to benzodiazepines and possible permanent effects.
*Vinitski v. Adler*, No. 2533, 2004 WL 2579288 (Com. Pl. Pa. Sept. 17, 2004).

Plaintiffs' reliance on the testimony of Drs. Breggin [ ] is misplaced. Specifically, the doctors' testimony fails to address the nexus between Aventis's alleged failure to warn of the drug's risks and Kenneth's death. Rather, Dr. Breggin's [ ] statements focus on the alleged connection between Kenneth's ingestion of M100907 and his death. Though such testimony might be worthy of consideration in a manufacturing or design defect case, it is irrelevant in a failure to warn case such as this.
*Kernke v. The Menninger Clinic, Inc.*, 173 F.Supp.2d 1117, 1123 (K.C. 2001).

## II. STANDARD

For summary judgment, a declaration by an expert witness must meet two tests: (1) the opinion must be admissible at trial (*F.R.E.* 702 and 703), and (2) the declaration must show that the declarant is competent to testify on the matters stated (*F. R. Civ. P.* 56(c)(4)). The declarant must establish that he or she is competent to give the expert opinion and the factual basis for the opinion is stated in the declaration. *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1008 (9th. Cir. 2007) Conclusory allegations on the ultimate legal issue are not sufficient to defeat summary judgment. *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008).

Under *F.R.E.* 702, a qualified expert may offer an opinion if the opinion is: (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the expert has applied the principles and methods to the facts of the case. Factors which may be considered in determining admissibility of expert testimony include: whether the theory or technique involved can or has been tested, whether it

3

has been subjected to peer review or publication, whether it has a high known or potential rate of error, whether it enjoys general acceptance in the relevant scientific community, whether the opinion is admissible under the hearsay exception, and whether its probative value outweighs its prejudicial effect. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-95 (1993).

The court serves as a gatekeeper and has broad discretion in deciding how to determine reliability of an expert's opinion and whether the opinion is reliable in order to ensure that the expert "employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Even if an expert relies on valid scientific studies, a judge may properly exclude the conclusions where there is "too great an analytical gap" between the data studies and the opinions proffered. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## III. ARGUMENT

A. <u>Dr. Breggin's Opinion That ECT Always Causes Brain Damage is Not Based on Sufficient Facts or Data</u>

Dr. Breggin's opinion that ECT causes brain damage is devoid of scientific support. His opinion appears to be entirely based on a review of "publications," the majority of which were published before 1982, when the practice of ECT and the devices used to administer ECT was vastly different. Although he references a number of "publications," he does not cite to any specific information contained in any of the publications which actually support his conclusion that ECT always causes brain damage to patients. Similar to his participation in the *Vinitski* case, Dr. Breggin's **general** representation here that certain publications support his conclusion amount only to a "few anecdotal references and a cursory review of several studies tangentially related to" potential cognitive effects from the application of ECT. *Vinitski*, *supra*, 2004 WL 2579288. This reliance, especially without further support,

4

is insufficient to base a radical opinion which is not accepted within the scientific medical community.

B.  <u>Dr. Breggin Offers No Methodology</u>

Dr. Breggin concludes that ECT always causes brain damage to patients, but does not articulate how he derived that conclusion. It does not appear that he has performed any clinical trials to assess the veracity of his conclusion, nor does he identify any clear means to verify his conclusion. Simply put, it is a bald assertion that is stated without any force of support.

## IV.  CONCLUSION

For the reasons discussed above, Dr. Breggin's statements and opinion that ECT causes brain damage should be excluded from evidence.

DATED: August 21, 2018                **POOLE & SHAFFERY, LLP**

By:  /s/ Jason A. Benkner
     David S. Poole
     Jason A. Benkner
Attorneys for Defendant SOMATICS LLC

POOLE SHAFFERY
400 South Hope Street, Suite 720, Los Angeles, CA 90071
Telephone: (213) 439-5390   Facsimile: (213) 439-0183